UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD O'NEAL WHITTED,

*Plaintiff*,

v.

P.O. E. MARSH, *72 Badge Number*, *et al.*,

*Defendants*.

No. 24-CV-1659 (KMK)

OPINION & ORDER

Appearances:

Richard O. Whitted
Coxsackie, NY
*Pro Se Plaintiff*

David L. Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendants*

Kimberly H. Lee, Esq.
Sokoloff Stern LLP
Poughkeepsie, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Richard Whitted ("Plaintiff"), proceeding pro se, brings this Action against Defendant Police Officers Eric Marsh ("Marsh") and Matthew Ragni ("Ragni") and Detectives Bradley Sukeena ("Sukeena") and Robert Stecher ("Stecher") (collectively "Defendants") pursuant to 42 U.S.C. § 1983, alleging excessive force in violation of the Fourth Amendment to

the U.S. Constitution. (*See generally* Second Am. Compl. ("SAC") (Dkt. No. 52).)[1] Before the Court is Defendants' Motion for Summary Judgment (the "Motion"). (*See* Not. of Mot. (Dkt. No. 81).) For the reasons set forth below, the Motion is granted in part and denied in part.

I. Background

A. Factual Background

The following facts are taken from Defendants' statement pursuant to Local Rule 56.1, (Defs.' Local Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 89)), the exhibits submitted by Defendants, Plaintiff's Second Amended Complaint, and Plaintiff's deposition transcript.[2] The

---

[1] Plaintiff identifies Sukeena as "Sukeema" in his Second Amended Complaint. (*See generally* SAC.) For the sake of clarity, the Court will refer to Sukeena using the proper spelling of his name throughout this Opinion.

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." The nonmoving party, in turn, must submit "a correspondingly numbered paragraph . . . responding to[] each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Loc. Civ. R. 56.1(b). "A pro se litigant is not excused from this rule," *Brandever v. Port Imperial Ferry Corp.,* No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (italics omitted), and "[i]f the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule," *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.,* 584 F.3d 412, 418 (2d Cir. 2009) (same); *Thomas v. DeCastro*, No. 14-CV-6409, 2021 WL 5746207, at *1 n.1 (S.D.N.Y. Dec. 1, 2021) (quoting *Freistat v. Gasperetti*, No. 17-CV-5870, 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021), then quoting *T.Y.*, 584 F.3d at 418) (same); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (same).

Here, Defendants filed and served their 56.1 statement, ("Defs.' 56.1"), in addition to a statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2, (Not. Pursuant to Loc. R. 56.2 (Dkt. No. 88)), and Plaintiff filed a response and a sur-reply, (*see generally* Pl.'s Resp. to Expert Witness Op. & Court's Order ("Pl.'s Opp'n") (Dkt. No. 93); Pl.'s Resp. to Defs.' Mem. of Law in Supp. of Mot. ("Pl.'s Sur-Reply") (Dkt. No. 96)). However, Plaintiff's response does not comply with Rule 56.1 because he simply asks the Court to "thoroughly review the video footage [of his arrest] and make its own determination on whether or not excessive force was used or not[,]" (Pl.'s Sur-Reply 1), instead of identifying specific factual disputes, (*see generally id.*; Pl.'s Opp'n).

Court recounts only those facts necessary to decide the Motion, and the facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (citation and quotation marks omitted).

Defendants are police officers and detectives with the City of Poughkeepsie Police Department. (Aff. of Eric Marsh in Supp. of Mot. ("Marsh Aff.") ¶ 1 (Dkt. No. 83); Aff. of Robert Stecher in Supp. of Mot. ("Stecher Aff.") ¶ 1 (Dkt. No. 84); Aff. of Matthew Ragni in Supp. of Mot. ("Ragni Aff.") ¶ 1 (Dkt. No. 85); Aff. of Bradley Sukeena in Supp. of Mot. ("Sukeena Aff.") ¶ 1 (Dkt. No. 86).) Plaintiff is a resident of Georgia and was visiting family in Poughkeepsie, New York at the time of the events giving rise to this Action. (Defs.' 56.1 ¶ 2; Aff. of Kimberly H. Lee in Supp. of Mot. Ex. C, Pl.'s Examination Before Trial Tr. ("Pl.'s Tr.") 7:15–8:13, 43:4–10 (Dkt. No. 82-3).)

On November 30, 2023, Plaintiff borrowed his daughter's car, a gray Toyota Camry, to drive to a local store. (Defs.' 56.1 ¶¶ 3, 5; Pl.'s Tr. 82:20–24, 83:11–15.) Ragni and Marsh observed Plaintiff driving back to his daughter's house, and they initiated a traffic stop after

---

Because Plaintiff has failed to controvert the facts set forth in Defendants' 56.1 Statements, the facts contained therein could be deemed admitted. *See Lin v. Amazon.com Servs., LLC*, No. 21-CV-6203, 2024 WL 4266008, at *1 (E.D.N.Y. Sept. 23, 2024) ("Because the [p]laintiff failed to controvert the facts set forth in the [d]efendant's 56.1 Statement, the [c]ourt may deem the facts admitted." (citation omitted)); *Mughal v. Pak. Int'l Airlines Corp.*, No. 14-CV-2505, 2018 WL 1135474, at *1 n.2 (E.D.N.Y. Feb. 28, 2018) (deeming the facts stated in the defendant's 56.1 statement admitted "[b]ecause [the] plaintiff failed to submit a counter statement of disputed facts in accordance with Local Rule 56.1"); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."). Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record" when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted); *see also Veras v. Jacobs*, No. 18-CV-6724, 2022 WL 2133842, at *1 n.1 (S.D.N.Y. June 14, 2022) (collecting cases).

watching Plaintiff commit at least one traffic infraction and running a DMV search, which revealed that the car's registration had expired and its plates were tied to a different vehicle. (Marsh Aff. ¶ 5; Ragni Aff. ¶ 4.)[3] Upon seeing flashing lights behind him, Plaintiff turned into a parking lot, parked the car, and took the keys out of the ignition. (Defs.' 56.1 ¶¶ 7–10; Pl.'s Tr. 90:6–91:21, 92:9–17.)

Marsh approached the driver's side of the car, knocked on the window, and asked for Plaintiff's identification. (Marsh Aff. ¶ 7; Defs.' 56.1 ¶ 11; Pl.'s Tr. 92:18–93:3; *see also* Marsh Aff. Ex. 1 ("Marsh BWC"), at 18:40:09–18:40:29 (showing Marsh approach Plaintiff's car, knock on the window, and ask for Plaintiff's identification).)[4] Despite not having a valid driver's license, (Defs.' 56.1 ¶ 4; Pl.'s Tr. 15:14–25), Plaintiff told Marsh that he needed to get out of the car because his wallet and identification were in his back pocket. (Defs.' 56.1 ¶ 26;

---

[3] Although there is some ambiguity as to the exact traffic violation that Plaintiff committed, (*contrast* Marsh Aff. ¶ 5 (claiming Marsh and Ragni "observed [Plaintiff] swerve the car outside the lane of travel") *with* Ragni Aff. ¶ 4 (claiming Marsh and Ragni "observed [Plaintiff's car] commit several traffic infractions")), this inconsistency is immaterial because Plaintiff does not contest the validity of the traffic stop, (*see generally* SAC; Pl.'s Opp'n; Pl.'s Sur-Reply), and admits that the car's handling was "wobbly[,]" (Defs.' 56.1 ¶ 6; Pl.'s Tr. 88:10–23).

[4] In support of their Motion, Defendants submit body worn camera footage from Marsh, Ragni, and non-party officers John Sullivan and Robert Green. (*See generally* Marsh BWC; Ragni Aff. Ex. 2 ("Ragni BWC") (Dkt. No. 85-2); Aff. of Kimberly H. Lee in Supp. of Mot. Ex. E Robert Green Bod[]y Worn Camera ("Green BWC") (Dkt. No. 82-5); Aff. of Kimberly H. Lee in Supp. of Mot. Ex. F John Sullivan Body Worn Camera ("Sullivan BWC") (Dkt. No. 82-6).) When referencing these exhibits, the Court cites to the time stamp in the upper right-hand corner of the video.

Additionally, although Plaintiff testified that he thought Ragni approached the driver's side of the car and Marsh approached the passenger's side, (Pl.'s Tr. 91:18–92:8, 92:18–23), Marsh and Ragni's body worn camera footage makes clear that Marsh approached the driver's side of the car and Ragni approached the passenger's side, (*see generally* Marsh BWC; Ragni BWC). Accordingly, the Court understands Plaintiff to have been confused about the names of the two officers and will interpret Plaintiff's testimony to be consistent with Marsh approaching the driver's side of the car and Ragni approaching the passenger's side.

Pl.'s Tr. 95:9–23.) Marsh asked if Plaintiff had anything with him that he was not supposed to have, and Plaintiff stated that he did not, but reiterated his request to step out of the car to retrieve his wallet from his back pocket. (Defs.' 56.1 ¶ 14; Pl.'s Tr. 97:10–22; Marsh BWC 18:41:00–18:41:08; Ragni BWC 18:41:00–18:41:11.) Marsh instructed Plaintiff to step out of the car and place his hands on the roof. (Defs.' 56.1 ¶ 15; Pl.'s Tr. 95:18–96:4, 97:23–98:6; Marsh BWC 18:41:08–18:41:44; Ragni BWC 18:41:39–18:41:47.) By this point, Ragni had come around to the driver's side of the car, and he placed his hand on Plaintiff's right hand while Marsh did the same to Plaintiff's left, and the officers began to frisk Plaintiff. (Defs.' 56.1 ¶ 16; Pl.'s Tr. 98:9–20; Marsh BWC 18:41:44–18:42:20; Ragni BWC 18:41:47–18:42:20.)

The Parties dispute exactly what happened next. Plaintiff claims that while his hands were on the roof of the car, Marsh "grabbed the fingers of [his] left hand and applied unnecessary, excessive force, [and] deliberately twisted [Plaintiff's] left wrist, which caused [him] extreme pain" and led to him withdraw his hands as an "automatic reflexive action[,]" (SAC 3; *see also* Pl.'s Tr. 98:16–100:8 (describing the events from Plaintiff's perspective)), and "step[] away" from the officers, (Pl.'s Tr. 101:18). According to Defendants, as Ragni patted down Plaintiff's waistband, he felt a gun, at which point Plaintiff "snatch[ed]" his hands back and pulled away from the officers. (Defs.' 56.1 ¶¶ 18, 27–28; Pl.'s Tr. 100:9–103:5.) Moreover, Defendants assert, and Plaintiff concedes, that Plaintiff resisted when he pulled away from the officers. (Defs.' 56.1 ¶¶ 18–20; Pl.'s Tr. 102:9–14.)

In response, Ragni and Marsh took Plaintiff to the ground and a struggle ensued. (Defs.' 56.1 ¶¶ 28–30; Pl.'s Tr. 104:20–25; Marsh BWC 18:42:48–18:45:45; Ragni BWC 18:42:31–18:43:20.) Marsh also radioed for backup. (Marsh BWC 18:42:28–18:42:30.) Although Ragni and Marsh's body-worn cameras were knocked off during the struggle, they continued to record,

and Plaintiff can be heard yelling for help as the officers repeatedly instruct him to give them his hands. (Marsh BWC 18:42:30–18:44:00; Ragni BWC 18:42:39–18:44:18.) The Parties dispute what happened during the struggle, with Plaintiff claiming he was punched in the head and rendered unconscious, (*contrast* Pl.'s Tr. 105:8–13 (claiming the officers "start[ed] punching [Plaintiff]" causing him to "pass[] out for half a second") *with* Ragni Aff. ¶ 10 (claiming he "did not punch or kick [Plaintiff] in the face or body" and did not "see any officer punch or kick him")), and Defendants claiming Plaintiff reached for his waistband, where the gun was located, (*contrast* Defs.' Mem. 9 (claiming Plaintiff "continued to reach for his waistband" while on the ground), *with* Pl.'s Tr. 112:12–113:12 (denying he reached for his waistband)).

Sukeena, Stecher, and other non-party officers arrived while Plaintiff, Marsh, and Ragni were still on the ground. (*See* Ragni BWC 18:43:18–18:43:25 (showing two unidentified individuals arriving at the scene); Marsh BWC 18:43:16–18:43:20 (showing an unidentified officer arriving at the scene and asking Plaintiff "what else you got?"); Green BWC 18:44:32–18:45:05 (showing Plaintiff held on the ground by Ragni and Sukeena); Sullivan BWC 18:44:34–18:45:03 (same).) Sukeena and Stecher assisted Ragni and Marsh in handcuffing Plaintiff's arms behind his back, (Defs.' 56.1 ¶ 30; *see also* Pl.'s Tr. 105:5–8 (describing being taken to the ground by Ragni and Marsh and then "the next thing you know[,] there [are] three, four [officers]")), though the Parties dispute exactly what Sukeena and Stecher did to aid Marsh and Ragni in doing so. According to Plaintiff, Sukeena and Stecher joined Ragni and Marsh in punching him. (Pl.'s Tr. 105:5–13, 108:8–12.) According to Defendants, Stecher "put [his] knee on [Plaintiff]'s belt area[,]" (Stecher Aff. ¶ 6), and Sukeena "h[e]ld [Plaintiff]'s left arm as he was placed in handcuffs[,]" (Sukeena Aff. ¶ 6). Defendants deny that either officer struck Plaintiff or "observe[d] any officer punching or kicking" him. (*Id.* ¶ 7; Stecher Aff. ¶¶ 6, 8.)

After searching Plaintiff's pockets, Green and Sukeena placed him in the back of a squad car and transported him to the station for processing. (Stecher Aff. ¶ 7; Green BWC 18:48:23–18:53:45; Sullivan BWC 18:48:00–18:48:06.)

Throughout his arrest and transportation to the station, Plaintiff complained about pain in his right arm. (*See* Marsh BWC 18:45:03–18:45:08 (capturing Plaintiff yelling about pain in his right arm and accusing the officers of breaking his right arm); Ragni BWC 18:45:03–18:45:08 (same); Green BWC 18:45:03–18:47:10, 18:50:37–18:50:51 (same).) After being processed at the station, he was taken to the hospital and treated for a broken elbow. (Pl.'s Tr. 63:2–68:24, 118:24–119:11, 123:25–125:24.) Plaintiff was subsequently indicted and pled guilty to criminal possession of a weapon. (Defs.' 56.1 ¶¶ 30–32; Pl.'s Tr. 22:22–23:3; Lee Aff. Ex. D Indictment (Dkt. No. 82-4).)

B. Procedural Background

Plaintiff commenced this Action by filing his Complaint on February 29, 2024. (*See* Compl. (Dkt. No. 1).) On March 22, 2024, Plaintiff requested to proceed in forma pauperis, that is, without prepayment of fees, (*see* Req. to Proceed In Forma Pauperis (Dkt. No. 4)), which the Court granted on March 26, 2024, (*see* Order Granting IFP App. (Dkt. No. 5)). On April 25, 2024, the Court ordered the U.S. Marshals to serve Defendants, (*see* Order of Service (Dkt. No. 7)), and Defendants were served on May 21, 2024, (*see* Marshal's Process of Receipt & Return of Service Executed (Dkt. No. 14); Marshal's Process of Receipt & Return of Service Executed (Dkt. No. 16)). Defendants subsequently filed their Answer to Plaintiff's Complaint on June 6, 2024. (*See* Answer (Dkt. No. 10).)

On June 7, 2024, Plaintiff filed an amended complaint, (*see* First Am. Compl. (Dkt. No. 15)), and Defendants filed their Answer to it on June 18, 2024, (*see* Answer (Dkt. No. 17)). On

October 10, 2024, the Court held an initial conference, during which it adopted a case management and scheduling order. (*See* Dkt. (minute entry for Oct. 10, 2024); Case Management & Scheduling Order (Dkt. No. 39).) The Parties subsequently proceeded to discovery. (*See generally* Dkt.) On February 5, 2025, Plaintiff filed his Second Amended Complaint, (*see* SAC), to which Defendants filed their Answer on February 13, 2025, (*see* Answer (Dkt. No. 53)).

On July 28, 2025, Defendants filed a pre-motion letter requesting permission to file a motion for summary judgment. (*See* Letter from Kimberly H. Lee, Esq. to Court (July 28, 2025) (Dkt. No. 75).) On August 29, 2025, the Court set a briefing schedule. (*See* Order (Dkt. No. 77).) Defendants filed their Motion for Summary Judgment on October 21, 2025. (*See* Not. of Mot.; Aff. of Kimberly H. Lee in Supp. of Mot. ("Lee Aff.") (Dkt. No. 82); Marsh Aff.; Stecher Aff.; Ragni Aff.; Sukeena Aff.; Aff. of John Monaghan in Supp. of Mot. ("Monaghan Aff.") (Dkt. No. 87); Notice Pursuant to Local Rule 56.2; Defs.' 56.1; Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.") (Dkt. No. 90).) On November 17, 2025, Plaintiff filed his Opposition. (*See* Pl.'s Opp'n.) On December 5, 2025, Defendants filed their Reply. (*See* Defs.' Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 94).) On February 5, 2026, Plaintiff filed his Sur-Reply. (*See* Pl.'s Sur-Reply.) On February 10, 2026, Defendants filed a letter opposing Plaintiff's Sur-Reply. (*See* Letter from Kimberly H. Lee, Esq. to Court (Feb. 10, 2026) (Dkt. No. 97).) However, in light of Plaintiff's pro se status, the Court will consider his Sur-Reply. (*See* Order (Dkt. No. 99).)

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation, alteration, and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion," the nonmovant must "create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014)

(quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (citation and quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments

of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)). Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010). Even where a plaintiff's "evidence may be thin, [his] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted).

B. Analysis

1. Probable Cause

Although not specifically articulated in his filings, Plaintiff appears to argue that Marsh and Ragni had no basis to ask him to exit the car or search him during the traffic stop. (*See* Pl.'s Sur-Reply 3 (arguing the officers' actions were "unwarranted when all they had to do was ask [P]laintiff for his drivers license . . . or allow him to get his wallet out of his rear pocket without immediately grabbing [P]laintiff[']s arm"); Pl.'s Tr. 98–103 (arguing the officers' actions were "not [proper] procedure").) Plaintiff is mistaken.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred[,]" *Whren v. United States*, 517 U.S. 806, 810 (1996), and it is undisputed that Marsh and Ragni observed Plaintiff commit

at least one traffic violation, (Marsh Aff. ¶ 5; Ragni Aff. ¶ 4). Further, the mismatch between the license plates on Plaintiff's car and the car to which they were registered provided reasonable suspicion of criminal activity beyond the traffic violation itself. *See Brace v. Johnson*, No. 20-CV-588, 2022 WL 504972, at *4 (N.D.N.Y Feb. 18, 2022) (finding the "[d]efendants had reasonable suspicion to stop [the plaintiff's] truck for having mismatched plates and registration"); *United States v. Hunley*, No. 07-CR-168, 2010 WL 2510901, at *5 (W.D.N.Y. Feb. 26, 2010) (finding the officers had reasonable suspicion to conduct a valid stop when the defendant's car had license plates registered to a different vehicle), *report and recommendation adopted*, 2010 WL 2510900 (W.D.N.Y. June 17, 2010).

Although "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop[,]" *Maryland v. Wilson*, 519 U.S. 408, 415 (1997); *see also Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000) ("[I]f a stop is lawful, passengers and drivers have no Fourth Amendment interest in not being ordered out of the stopped vehicle."), Plaintiff asked to exit the car to retrieve his identification from his back pocket, (Defs.' 56.1 ¶ 26; Pl.'s Tr. 95:9–23; Marsh BWC 18:40:20–18:40:33). Further, the fact that Marsh and Ragni stopped Plaintiff in a high-crime area, (Marsh Aff. ¶ 6), coupled with the possibility that the car may have been stolen, amounted to reasonable suspicion that Plaintiff may have been armed, giving the officers reason to pat Plaintiff down, *see United States v. Weaver*, 9 F.4th 129, 151 n.86 (2d Cir. 2021) (noting the fact that police stopped the defendant "in a high crime area . . . is a significant factor that meaningfully contributed to the reasonable suspicion that he was armed"); *Hunley*, 2010 WL 2510901, at *8 (finding it was reasonable for the officers to suspect the defendant was armed, justifying a pat down search, when he was stopped in "the locale of a high crime area" and his car had mismatched plates, creating "the possibility that [the car] had been stolen by the

defendant"). In sum, there is nothing unconstitutional about Marsh and Ragni's decision to pull Plaintiff over or pat him down.

2. Excessive Force

Defendants argue that the Court should grant summary judgment on Plaintiff's excessive force claims against Ragni and Marsh because they used a reasonable amount of force in arresting Plaintiff in light of his resistance and being armed with a weapon. (Defs.' Mem. 6–10.) With respect to the excessive force claims against Sukeena and Stecher, Defendants argue that summary judgment is warranted because Plaintiff cannot identify what role, if any, either played in his alleged assault, and the names of these Defendants on Plaintiff's arrest paperwork is not sufficient to show personal involvement. (*Id.* at 10.)

a. Applicable Law

"Claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen are analyzed under the Fourth Amendment and its reasonableness standard." *Walker v. Carrozzo*, 664 F. Supp. 3d 490, 519 (S.D.N.Y. 2023) (quoting *Pateman v. City of White Plains*, No. 17-CV-6156, 2020 WL 1497054, at *13 (S.D.N.Y. Mar. 25, 2020)). "When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting [the officers], without regard to [the officers'] underlying intent or motivation.'" *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (alteration in original) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). To evaluate the reasonableness of an officer's conduct, a court should "consider the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the

suspect is resisting or attempting to evade arrest." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999); *see also Kerman v. City of New York*, 261 F.3d 229, 239 (2d Cir. 2001) (observing that the reasonableness determination "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" (quotation marks and citation omitted)).

"De minimis injuries can serve as evidence that de minimis force was used." *Kayo v. Mertz*, 531 F. Supp. 3d 774, 798 (S.D.N.Y. 2021) (collecting cases). However, a "[p]laintiff need not demonstrate serious injury to prevail in an excessive force claim; bruising and other nonpermanent injuries are sufficient." *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 177 (E.D.N.Y. 2010) (quoting *Sforza v. City of New York*, No. 07-CV-6122, 2009 WL 857496, at *15 (S.D.N.Y. Mar. 31, 2009)).

b. Marsh and Ragni

Plaintiff alleges two categories of conduct by Marsh and Ragni that could arguably constitute excessive force: (1) the twisting of his fingers and wrist when he had his hands on top of the car during the initial traffic stop, (Pl.'s Sur-Reply 2 (claiming that "prior to any weapon being discovered[,] the officers had already begun to assault [P]laintiff . . . [by] twist[ing] [his] arm behind his back" which caused Plaintiff to "twist and turn in order to ease the pain")), and (2) the force used when Plaintiff was taken to the ground and handcuffed, (SAC 3). The Court addresses each of these categories in turn. *See Pateman v. City of White Plains*, No. 17-CV-6156, 2020 WL 1497054, at *13–18 (S.D.N.Y. Mar. 25, 2020) (addressing separately the plaintiff's allegations of excessive force during his initial arrest, transportation, and handcuffing); *Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *14–17

(S.D.N.Y. Sept. 30, 2015) (addressing separately the plaintiff's allegations of tight handcuffing, threats of arrest and property destruction, brandishing weapons, and physical force).

i. Initial Stop and Pat Down

Defendants argue that the body worn camera footage demonstrates beyond dispute that Marsh and Ragni did not twist Plaintiff's fingers, wrist, or hand during the initial stop and pat down. (Defs.' Mem. 7–8.) The Court agrees.

During the pat down, Marsh initially used his left hand to hold Plaintiff's left arm on top of the car while his right hand held a flashlight, (Marsh BWC 18:41:45–18:41:55), before switching to use his right hand to hold Plaintiff's left arm while his left hand patted down the left side of Plaintiff's body, (*id.* 18:41:56–18:42:09). Once he was finished with his part of the pat down, Marsh switched back to using his left hand to hold Plaintiff's left arm on top of the car while his right held a flashlight. (*Id.* 18:42:09–18:42:26.) Footage from Marsh's body worn camera also shows that Officer Ragni initially used his right hand to hold Plaintiff's right arm on top of the car while Ragni's left hand was at his side. (*Id.* 18:41:54–18:42:13.) Once Marsh finished patting down Plaintiff's left side, Ragni used his left hand to pat down Plaintiff's right side while his right hand continued to hold Plaintiff's right arm on top of the car, (Ragni BWC 18:42:05–18:42:19), before releasing Plaintiff's right arm and continuing the pat down with his right hand while his left held a flashlight, (*id.* 18:42:20–18:42:29). At no point did either officer twist either of Plaintiff's hands, wrists, or arms or pull on his fingers.

Although Plaintiff's and Defendants' descriptions of this portion of the events diverge significantly, "[i]ncontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court . . . if it is so utterly discredits the opposing party's version [such] that no reasonable juror could fail to believe the

version advanced by the moving party." *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) (citation omitted); *see also Scott*, 550 U.S. at 380–81 (same). Based on the body worn camera footage, the Court finds that no reasonable juror could conclude that Marsh and Ragni used excessive force against Plaintiff during the pat-down. Thus, the Court grants Defendants' Motion as it pertains to the initial traffic stop and pat-down.

ii. Take Down and Arrest

It is undisputed that Plaintiff resisted when he pulled away from Marsh and Ragni, (Defs.' 56.1 ¶¶ 18–20; Pl.'s Tr. 102:9–14), and that, in response, Marsh and Ragni tackled him to the ground, (Defs.' 56.1 ¶ 28; Pl.'s Tr. 104:20–25). While Plaintiff claims the officers then started "punching" him, causing him to "pass[] out for half a second" before coming back to consciousness due to the pain in his elbow, (Pl.'s Tr. 105:8–13; *see also id.* 108:10–11 (testifying he was "punched in the face, in the head")), Defendants dispute this characterization of the ensuing struggle, pointing to body worn camera footage in which "Plaintiff is yelling or talking the whole time[,] contradicting any claim [that] he lost consciousness[,]" and Plaintiff's booking photos, which "show no injuries to his head or face," (Defs.' Mem. 8). The Parties also dispute whether Plaintiff reached for his waistband, where the gun was located, during the struggle. (*Contrast* Defs.' Mem. 9 (claiming Plaintiff "continued to reach for his waistband" while on the ground), *with* Pl.'s Tr. 112:12–113:12 (denying he reached for his waistband).)

Plaintiff's and Defendants' stories are inherently in dispute, and the Court finds that unlike the footage of Plaintiff's initial stop and pat down, the video evidence of the subsequent events is not so "blatant[ly] contradict[ory]" that "no reasonable jur[or] could believe" Plaintiff's account. *Scott*, 550 U.S. at 380. As Defendants acknowledge, both Marsh and Ragni's body worn cameras were knocked off during the ensuing struggle, so only audio of this part of the

encounter is available. (Defs.' Mem. 8.) Additionally, despite the lack of visible cuts or bruises in Plaintiff's booking photos, his elbow was broken during the incident, (*see generally* Ragni Aff. Ex. 3 ("Booking Photos") (Dkt. No. 85-3)), indicating some level of force was used during his arrest. "The fact that a person . . . resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit." *Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000); *see also McKinney v. City of Middletown*, 712 F. App'x 97, 98 (2d Cir. 2018) (summary order) ("Even where most of the facts concerning the application of force are undisputed, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable. An officer's use of force must be reasonable even when an arrestee or detainee is actively resisting." (citations, internal quotation marks, and alteration omitted)). In the face of Plaintiff's and Defendants' competing narratives and the inconclusive nature of Defendants' proffered evidence, the Court cannot determine, as a matter of law, that Marsh and Ragni's use of force was objectively reasonable. Accordingly, summary judgment is denied as to this part of Plaintiff's excessive force claim. *See Moran v. Tesei*, No. 19-CV-722, 2023 WL 3570670, at *11 (D. Conn. May 19, 2023) (declining to grant summary judgment on the plaintiff's excessive force claim because, in the face of "competing accounts," "the [c]ourt cannot determine as a matter of law whether [the defendant's] use of force was proportional to [the plaintiff's] resistance and therefore, reasonable, or if [the defendant's] use of force was gratuitous and therefore, excessive" (citation omitted)); *Mastromonaco v. Cnty. of Westchester*, No. 15-CV-10166, 2018 WL 4042111, at *7–8 (S.D.N.Y. Aug. 23, 2018) (denying summary judgment on the plaintiff's excessive force claim

because "[a] reasonable juror could credit [the] plaintiff['s] . . . testimony over [the] defendants' assertion that [one of the defendant officers] did not punch [the] plaintiff").

c. Sukeena and Stecher

Defendants argue summary judgment should be granted for Sukeena and Stecher because Plaintiff could not identify their specific involvement in the altercation. (Defs.' Mem. 10.) While Plaintiff does not know which officer broke his arm or what each officer did to effectuate his arrest, (*see* Pl.'s Tr. 107:18–111:22 (testifying that he does not know which officer had his right elbow and did not see which specific officer(s) struck him)), there is sufficient evidence in the record for a reasonable juror to conclude that Sukeena and Stecher were personally involved in Plaintiff's arrest. Specifically, Stecher affirms, and video evidence shows, that he helped hold Plaintiff down, (Stecher Aff. ¶ 6; Green BWC 18:44:32–18:45:05 (showing Plaintiff held on the ground by Ragni and Sukeena); Sullivan BWC 18:44:34–18:45:03 (same)), and Sukeena affirms, and video evidence shows, that he held Plaintiff's left arm, helped handcuff Plaintiff, and escorted Plaintiff to the police cruiser, (Sukeena Aff. ¶¶ 6–7; Green BWC 18:48:23–18:53:45; Sullivan BWC 18:48:00–18:48:06). Thus, the Court denies the summary judgment motion as to Sukeena and Stecher.

2. Qualified Immunity

Defendants argue that they are entitled to summary judgment under the doctrine of qualified immunity. (Defs.' Mem. 11–13.) With respect to the parts of Plaintiff's excessive force claims that survive summary judgment, the Court concludes that qualified immunity is not proper at this stage.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity defense, thus, is a broad shield that protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013)).

"[S]ummary judgment for defendants on grounds of qualified immunity is . . . appropriate only . . . if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff and with all permissible inferences drawn in his favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right." *Turner v. City of New York*, No. 18-CV-9626, 2019 WL 6173701, at *6 (S.D.N.Y. Nov. 19, 2019) (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)). "In the event that there are triable disputes as to the circumstances that could dictate whether the defendants could reasonably believe that his conduct was lawful, summary judgment based on an immunity defense must be denied." *Allen v. N.Y.C. Dep't of Corrs.*, No. 06-CV-7205, 2010 WL 1644943, at *15 (S.D.N.Y. Mar. 17, 2010), *report and recommendation adopted*, 2010 WL 1631404 (S.D.N.Y. Apr. 19, 2010).

Here, there remain issues of disputed fact with respect to the amount and type of force used when Plaintiff was taken to the ground and arrested. The Second Circuit has made clear that "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (quotation marks and alterations omitted); *see also Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003) (same); *Hemphill v. Schott*, 141 F.3d 412, 418 (2d

Cir. 1998) ("[S]ummary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain."). Accordingly, Defendants are not entitled to summary judgment on the basis of qualified immunity at this stage. *See Dunham v. City of New York*, No. 11-CV-1223, 2021 WL 918373, at *8 (S.D.N.Y. Mar. 10, 2021) (finding genuine disputes of material fact precluded summary judgment on both qualified immunity and the merits of the plaintiff's excessive force claim); *Whitfield v. City of Newburgh*, No. 08-CV-8516, 2015 WL 9275695, at *22 (S.D.N.Y. Dec. 17, 2015) (same).

III. Conclusion

For the reasons set forth above, Defendants' Motion is granted in part and denied in part. The Clerk of the Court is respectfully directed to mail a copy of this Opinion and Order to Plaintiff and to terminate the pending Motion at Dkt. No. 81.

SO ORDERED.

Dated: September 29, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge